IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICOLE BERTSCH, )
)
      Plaintiff, )
)
    v. ) Civil Action No. 17-286-E
)
)
NANCY A. BERRYHILL, COMMISSIONER )
OF SOCIAL SECURITY ADMINISTRATION, )
)
      Defendant. )

O R D E R

AND NOW, this 25th day of March, 2019, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14), filed in the above-captioned matter on April 17, 2018,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 12), filed in the above-captioned matter on March 16, 2018,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**    **Background**

On July 22, 2004, Plaintiff Nicole Bertsch originally filed a claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Her

1

diagnoses were osteomyelitis, periostitis, and other infections involving bone, and spina bifida. (R. 65). A continuing disability review, performed in April 2011 and listing the same diagnoses, resulted in a continuation of benefits. (R. 66). In January 2015, another continuing disability review was performed, listing Plaintiff's same diagnoses, which terminated Plaintiff's benefits. (R. 69). Upon reconsideration in October 2015, a hearing officer agreed that Plaintiff's disability had ceased, listing her diagnoses as amputation of right great toe and curvature of spine. (R. 71).

Next, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on February 4, 2016. (R. 31-63). In a decision dated June 13, 2016, the ALJ denied Plaintiff's request for benefits. (R. 7-22). The Appeals Council declined to review the ALJ's decision on September 8, 2017. (R. 1-6). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.     Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v.

2

Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

If a claimant is found to be entitled to disability benefits, continued entitlement to such benefits is then reviewed periodically. See 20 C.F.R. § 416.994(a). The Social Security Administration has promulgated regulations incorporating a seven-step evaluation process for determining whether a claimant continues to be under a disability as defined by the Act. See 20 C.F.R. § 416.994. At Step One, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R.

§§ 416.920(d), 416.925, 416.926. If the claimant does, then disability will be found to continue. See 20 C.F.R. § 416.994(b)(5)(i). If not, the ALJ's analysis proceeds to Step Two.

At Step Two, the ALJ must determine whether medical improvement has occurred. See 20 C.F.R. § 416.994(b)(5)(ii). "Medical improvement is any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled." 20 C.F.R. § 416.944(a)(1)(i). Moreover, a "determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." Id. If medical improvement has occurred, the analysis proceeds to Step Three; if it has not, the analysis proceeds to Step Four. See 20 C.F.R. § 416.994(b)(5)(ii).

At Step Three, the ALJ must determine whether medical improvement is related to the ability to work, i.e., whether there has been an increase in the claimant's residual functional capacity ("RFC") based on impairments present at the time of the most recent favorable medical determination ("comparison point decision" or "CPD"). See 20 C.F.R. § 416.994(b)(5)(iii). If so, the analysis proceeds to Step Five; if not, the analysis proceeds to Step Four. See id.

At Step Four, the ALJ must consider whether an exception to medical improvement, from one of two groups of exceptions, applies. See 20 C.F.R. §§ 416.994(b)(5)(iv), 416.994(b)(3), 416.994(b)(4). If an exception from the first group applies, the analysis proceeds to Step 5. If an exception from the second group applies, the claimant's disability ends. If no exception from either group applies, the claimant's disability continues. See 20 C.F.R. § 416.994(b)(5)(iv).

At Step five, the ALJ must determine whether all of the claimant's current impairments in combination are severe. See 20 C.F.R. § 416.994(b)(5)(v). If all of the claimant's current impairments in combination do not significantly limit the claimant's ability to do basic work

activities, the claimant is no longer disabled; if they do, the ALJ's analysis proceeds to Step Six. See id.

At Step Six, the ALJ must assess the claimant's RFC based on the current impairments and determine if the claimant can do past relevant work. See 20 C.F.R. § 416.994(b)(5)(vi). If the claimant has the capacity to perform past relevant work, disability has ended; if not, the ALJ's analysis proceeds to Step Seven. See id.

At Step Seven, the last step, the ALJ must determine whether other work exists that the claimant can perform, taking into consideration the claimant's age, education, past work experience, and RFC. See 20 C.F.R. § 416.994(b)(5)(vii). If the claimant can perform other work, he or she is not disabled; if the claimant cannot perform other work, his or her disability continues. See id. At this stage, a limited burden of going forward with the evidence shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work that exists in the national economy, given the above-mentioned factors.

### III.     The ALJ's Decision

In the present case, the ALJ found, first, that the most recent favorable medical decision finding that Plaintiff continued to be disabled is the determination dated April 11, 2011, noting that this is the CPD. (R. 12). The ALJ also found that, at the time of the CPD, Plaintiff had certain severe impairments, specifically, osteomyelitis and other bone infections, spina bifida, and obesity. (R. 12). The ALJ further found that Plaintiff did not develop any additional impairments after the CPD through January 1, 2015, so her current impairments are the same as the CPD impairments. (R. 12).

The ALJ next concluded that Plaintiff's impairments did not meet any of the Listings that would satisfy Step One. (R. 12). The ALJ found that medical improvement occurred as of January 1, 2015. (R. 12).

The ALJ also determined that, beginning on January 1, 2015, Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she requires a sit/stand option every 30 minutes; must avoid walking on uneven surfaces; can never climb ladders, ropes, or scaffolds; can never crawl; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, and crouch; can never use the right lower extremity for the operation of foot controls; must avoid concentrated exposure to extreme heat and cold, wetness, humidity, and vibration; and must avoid all exposure to hazards such as heights and moving machinery. (R. 13). The ALJ also found that Plaintiff's medical improvement is related to the ability to work because it has resulted in an increase in her RFC. (R. 15).

The ALJ then explained that Plaintiff's impairments have continued to be severe and that she has no past relevant work. (R. 15). The ALJ used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as election clerk, call out operator, and surveillance system monitor. (R. 16). Accordingly, the ALJ found that Plaintiff has been able to perform a significant number of jobs in the national economy. Thus, the ALJ concluded that Plaintiff's disability ended on January 1, 2015, and that she has not become disabled again since that date. (R. 17).

**IV.     Legal Analysis**

Plaintiff raises several arguments as to why she believes that the ALJ erred in finding her to be no longer disabled. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this particular case. Specifically, because the Court finds that the ALJ did not clearly explain the reasoning underlying his finding that Plaintiff experienced "medical improvement" at Step Two of his evaluation, the Court cannot find that the ALJ's decision is supported by substantial evidence. Accordingly, the Court will remand the case for further consideration.

In response to the question at Step Two whether there has been medical improvement as shown by a decrease in medical severity, the ALJ stated definitively, "Medical improvement occurred as of January 1, 2015." (R. 12). The ALJ then stated, "As will be discussed in detail below, the medical evidence establishes that as of January 1, 2015, the claimant was no longer disabled as her impairments had improved and she did not have any other disabling impairment." (R. 12). The ALJ then proceeded to Step Three without further discussion. The Court finds, however, that the ALJ never adequately explained later in his decision the basis for his finding that medical improvement had occurred.

As noted, supra, "medical improvement" is defined as a decrease in the medical severity of impairments which were present, at the time of the claimant's CPD, **as established by improvement of symptoms, signs and/or laboratory findings associated with those impairments**. See 20 C.F.R. § 416.994(b)(1)(i) (emphasis added). The ALJ here explained, among other things, that Plaintiff testified to having numbness and weakness in her foot as well as back pain and foot ulcers. (R. 13). He also discussed Plaintiff's recent treatment with her primary care physician, including her report that Plaintiff showed some right leg disfunction,

7

atrophy, and decreased sensation. (R. 13-14). He also described a consultative examination in which the doctor found that Plaintiff walked with a slight limp to the right but did not use an assistive device, had mild sensation loss in her right lower leg, and 3/5 strength in the right leg. (R. 14).

The ALJ did not actually explain, however, how Plaintiff's symptoms have decreased in severity and thus how her symptoms have shown medical improvement since her last CPD. See, e.g., Morris v. Colvin, 21 F. Supp. 3d 360, 373-74 (D. Del. 2014) (where the ALJ's finding of medical improvement was based in part on evidence including treatment notes indicating the plaintiff was no longer taking narcotic pain medication, no longer using a cane, and was not compliant with the recommended medical care and treatment); Neff v. Colvin, No. 3:14-cv-2278, 2015 WL 4878720, at *11-12 (M.D. Pa. Aug. 14, 2015) (where the ALJ cited examination notes showing a decrease in symptoms over time, and thus showing medical improvement). In fact, the ALJ here made no reference in his decision to the severity of Plaintiff's earlier symptoms at the time of the CPD, let alone how the severity of the symptoms then compare to the severity now.

The Court notes that the government's brief attempts to more clearly provide an explanation for why medical improvement was found to have occurred, explaining that Plaintiff previously had a non-healing necrotic ulcer, required treatment for an infection (osteomyelitis) in her right foot, and required an assistive device to walk. (Doc. No. 15, at 14). However, it is the ALJ's responsibility to explicitly provide reasons for his findings, and later justification provided by the government cannot make up for what is lacking in the ALJ's decision. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). Because, under the facts of this particular case, the ALJ has not adequately explained the basis for his finding that Plaintiff experienced medical

8

improvement, his reasoning is simply unclear to the Court. Since the Court cannot discern if the ALJ's decision is supported by substantial evidence, remand is necessary.

While the ALJ is certainly permitted to find that Plaintiff has experienced medical improvement, the Court finds that the ALJ's justification for such conclusion is simply insufficient here. Thus, remand is required to allow for clearer and more detailed discussion of the ALJ's evaluation of the evidence in this regard.

Additionally, although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that proper consideration be accorded to the various opinion and medical evidence presented in the record. Further, the ALJ should verify that all of his conclusions are fully explained in order to eliminate the need for any future remand.

## V. **Conclusion**

In short, because the ALJ failed to clearly explain the reasoning underlying his finding that Plaintiff had experienced medical improvement, the Court cannot find that substantial evidence supports the ALJ's decision in this case. Accordingly, the Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch
United States District Judge

ecf:	Counsel of record